FILED

NOV 20 2018

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Plaintiff, : | |
| : | Criminal No.   17-cr-215 |
| : | |
| RODERICK BENNETT, : | |
| : | |
| Defendant. : | |
| : | |

## PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant RODERICK BENNETT and the government agree as follows:

1. **GUILTY PLEA**

   A. **Counts of Conviction**

   Defendant BENNETT will enter a plea of guilty to Counts One through Three of the Indictment, which charges Defendant BENNETT with Theft from a Labor Organization (29 U.S.C. § 501(c)).  Defendant BENNETT elects to go to trial on Counts Four and Five of the Indictment.

   In consideration for Defendant BENNETT's pleas of guilty to the above offenses, the Government agrees that Defendant BENNETT will not be further prosecuted by United States Department of Justice or the United States Attorney for

1

the District of Columbia for the conduct set forth in the Attached Statement of Offense.

After the entry of Defendant BENNETT's pleas of guilty to the offenses above, he will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed by Defendant BENNETT prior to the execution of this Agreement and about which the United States Department of Justice was aware prior to the execution of this Agreement. However, the United States expressly reserves its right to prosecute Defendant BENNETT for any crime of violence if in fact he committed or commits such a crime of violence prior to or after the execution of this Agreement.

**B.     Elements of Offense**

The elements of Counts One, Two, and Three are: 1) a union officer or employee of the victim "labor organization"; 2) who unlawfully deprived (embezzled, converted, stole, or abstracted); 3) the property or assets of said "labor organization"; and did so with 4) fraudulent intent.   29 U.S.C. § 501(c).

**C.     Factual Basis for Guilty Plea**

The Statement of Facts attached hereto is a sufficient and accurate basis for Defendant BENNETT's guilty plea to Counts One through Three.

2

### D. Remaining Counts

Defendant BENNETT has elected to go to trial on Counts Four and Five of the Indictment.

## 2. SENTENCING GUIDELINES

### A. Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B. Agreements With Respect to the Sentencing Guidelines

Except as provided below, Defendant BENNETT's guideline range will be calculated as follows, using an anticipated criminal history category of I:

1) The guideline range shall be calculated using guideline section 2B1.1(a) for a based offense level of 6;

2) The specific offense characteristics shall be determined using section 2B1.1(b);

3) The Government shall pursue a two-point enhancement from Abuse of Trust, pursuant to section 3B1.3; and

4) Defendant shall receive a two-point reduction for acceptance of responsibility pursuant to the terms of subsection (C) below.

The Court is not bound by the recommendation concerning the guideline range, and Defendant BENNETT understands that he will have no right to withdraw his guilty pleas if the Court does not follow his recommendation.

If the Court finds:

a. Defendant BENNETT's criminal history category is higher than I as set forth above;

b. that the offense level should be higher because, after pleading guilty, Defendant BENNETT made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime. If any such finding results in a guideline range higher than anticipated by the parties, the higher guideline range becomes the agreed range. However, if the Court finds that Defendant BENNETT is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other Federal law, and that finding is not already reflected above, this paragraph does not authorize a corresponding increase in the agreed range.

The parties agree that Defendant BENNETT shall be sentenced for the above offenses after Count 4 and 5 of the Indictment are resolved. The Government will not oppose any motion by Defendant under Section 5G1.3(d) of the Sentencing Guidelines for a concurrent sentence.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected above, except as necessary to the Court's determination regarding subsections (a) and (b), above.

4

### C. Acceptance of Responsibility

The Government agrees that a 2-level reduction will be appropriate, pursuant to USSG § 3E1.1, provided that Defendant BENNETT clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution, adherence to every provision of this Agreement, and conduct between entry of the plea and imposition of sentence. Defendant BENNETT understands that the Government believes that an additional 1-level reduction, pursuant to USSG § 3E1.1(b), is not appropriate and the government will not file a motion seeking such a reduction.

Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1, and/or imposition of an adjustment for obstruction of justice, pursuant to USSG § 3C1.1, regardless of any agreement set forth above, should Defendant BENNETT move to withdraw his guilty plea after it is entered, or should it be determined by the Government that the defendant has either (a) engaged in conduct unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice, or (b) engage in additional criminal conduct after signing this Agreement.

### 3. SENTENCE

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

5

A.    **Imprisonment**

The Government makes no recommendation to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), regarding a term of imprisonment.. Regardless, the parties understand that no recommendation is binding on the Court, and that if the Court does not follow the parties' recommendations at the sentencing hearing, Defendant BENNETT will have no right to withdraw his guilty plea.

B.    **Supervised Release**

A term of supervised release follows any term of imprisonment.  The Court must impose a term of supervised release of no less than three (3) years.  The Government will recommend that Defendant BENNETT receive a supervised release term of three (3) years.

C.    **Special Assessment**

Defendant BENNETT will pay a special assessment of $100 per count to which he has pleaded guilty, for a total of $300, and must provide the government with a receipt for the $300 payment before sentence is imposed.

D.    **Fine**

There is no agreement as to fines.

E.    **Restitution**

The parties agree that Defendant BENNETT shall be subject to an order of restitution pursuant to 18 U.S.C. § 3663(a).

6

4. **OTHER PROVISIONS**

   A. <u>Use of Withdrawn Guilty Plea</u>

   If the Court allows Defendant BENNETT to withdraw his guilty pleas for a fair and just reasons pursuant to Fed. R. Crim. P. 11(d)(2)(B), Defendant BENNETT waives his rights under Fed. R. Evid. 410, and the government may use his guilty pleas, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

5. **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

   The recommendations in Part 3 are not binding on the Court. Defendant BENNETT has no right to withdraw his guilty pleas and the parties have no right to withdraw from this agreement if the Court decides not to follow them.

6. **WAIVER OF APPEAL**

   Defendant BENNETT waives any right he may have to appeal his conviction. Defendant BENNETT agrees to waive the right to appeal the sentence in this case, or the manner in which it was determined, except to the extent that (a) the Court sentences Defendant BENNETT to a period of imprisonment longer than the statutory maximum, or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. § 5K2.0, or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). In agreeing to this waiver, Defendant BENNETT is aware that his sentence has yet to be determined by the Court.

7

If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, Defendant BENNETT also waives any right he may have to appeal his sentence in exchange for the concessions made by the Government in this Plea Agreement. If the sentence imposed is within the guideline range determined by Paragraph 2B, the Government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

Defendant BENNETT reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2), but agrees to waive the right to appeal the denial of such motion.

Defendant BENNETT reserves the right to make a collateral attack upon his sentence, pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him or if he claims ineffective assistance of counsel.

7. **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEAS OR VACATION OF CONVICTION**

If Defendant BENNETT is allowed to withdraw his guilty pleas or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against Defendant BENNETT within six months after the date the order vacating Defendant BENNETT's conviction or allowing him to withdraw his guilty pleas becomes final, which charges relate directly or indirectly to the conduct underlying the guilty pleas or to any conduct reflected in

the his guideline range, Defendant BENNETT waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**8.     PARTIES TO PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Department of Justice and the United States Attorney's Office for the District of the District of Columbia.

**9.     SCOPE OF PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings, and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty pleas are entered in the Court. Thus, no oral or written promises made by the Government to Defendant BENNETT or to the attorney for the Defendant BENNETT at any time before Defendant BENNETT pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if Defendant BENNETT has entered into a proffer agreement in writing or a cooperation agreement in writing with the Government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against Defendant BENNETT or any forfeiture claim against any property by the United States or any other party.

**10. ADDITIONAL ACKNOWLEDGEMENTS BY DEFENDANT BENNETT**

Defendant BENNETT acknowledges that convictions of the crimes described in this agreement disqualify him by operation of law from serving in the capacities described in 29 U.S.C. §§ 504 and 1111, including (1) employment with labor organizations or employee benefit plans, (2) service as a labor relations consultant to a labor organization, employer, or employer organization or (3) service as a consultant or adviser to a labor organization or an employee benefit plan, for a period which extends until 13 years after the date of sentence or the end of any imprisonment resulting from conviction of the crime described in this agreement, whichever is later.

Defendant further acknowledges that conviction of such crimes also disqualify him from serving in equivalent capacities with respect to a labor organization subject to 29 C.F.R. § 458.36, including, but not limited to, service as an officer, employee, consultant, adviser, or representative in any capacity, to a federal public sector labor organization.

**11. ACCEPTANCE OF AGREEMENT BY DEFENDANT BENNETT**

This plea offer expires unless it has been fully signed and received in the Office of the United States Department of Justice, Organized Crime and Gang Section by

10

Tuesday, November 20, 2018. The Government reserves the right to modify or revoke this offer at any time before Defendant BENNETT pleads guilty.

DATE: NOVEMBER 20, 2018

_____
DAVID JAFFE, CHIEF,
ORGANIZED CRIME AND GANG SECTION
DEPARTMENT OF JUSTICE

_____
VINCENT FALVO
TRIAL ATTORNEY

BY SIGNING BELOW, DEFENDANT BENNETT ACKNOWLEDGES THAT HE HAS READ (OR BEEN READ) THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS. HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND REPRESENTATION. DEFENDANT BENNETT AGREES THAT HE HAS HAD A FULL AND COMPLETE OPPORTUNITY TO CONFER WITH HIS ATTORNEY, AND HAS HAD ALL OF HIS QUESTIONS ANSWERED BY HIS ATTORNEY.

_____  _____
GLENN F. IVEY                                        RODERICK BENNETT
ATTORNEY FOR DEFENDANT                DEFENDANT

DATE: NOVEMBER 20, 2018

## STATEMENT OF FACTS

Laborers International Union of North America (LIUNA) is a labor organization which represents laborers in the construction industry. LIUNA is governed by a constitution and by-laws. Defendant RODERICK BENNETT (BENNETT) served as Chief of Staff to the General President of LIUNA for four years, ending in BENNETT's dismissal in October 2016, and as such was an employee of a labor organization. LIUNA's headquarters was located at 905 16th Street, Northwest Washington, DC 20006.

LIUNA provides AMEX credit cards for its headquarters' officials and employees who incur business expenses. LIUNA issued the AMEX cards for business purchases only and specified that they were not to be used for personal purchases. LIUNA has adopted a "Code of Best Practices" binding on all LIUNA officers, employees, and members, that specifies, in pertinent part, that, "Union officials and representatives shall insure that Union assets and resources are expended only for proper purposes and never for personal gain or advantage."

The monthly bills of those LIUNA officials and employees carrying AMEX cards are paid automatically by LIUNA. In turn, all holders of the LIUNA-issued AMEX credit cards are required to prepare a Monthly Report of Business Expenses and file it with the LIUNA Accounting Department along with original receipts. The Accounting Department delivers the monthly AMEX bill, which it has already paid, to each cardholder. The cardholder thereafter returns his Monthly Report, along with the required vouchers and receipts, as well as payment for any personal charges made on the card.

BENNETT carried an LIUNA-issued AMEX credit card during his period as Chief of Staff. Defendant BENNETT intentionally and knowingly made numerous personal charges on his LIUNA-issued AMEX card every month, and the LIUNA Accounting Department was continually invoicing him to repay LIUNA for personal purchases. Despite those constant reminders, BENNETT frequently carried a running debt to the union. In addition, BENNETT often failed to submit dozens of receipts per month and, at times, had numerous missing receipts. BENNETT would submit to the Accounting Department vouchers which sometimes denoted that certain purchases were personal and were reimbursed.

By his termination in October 2016, BENNETT intentionally and knowingly made dozens of unauthorized, personal purchases on his LIUNA AMEX credit card

13

which were contrary to LIUNA's rules governing use of the AMEX card, and which provided no benefit to LIUNA. Such charges involved an abuse and misuse of BENNETT's position and employment in LIUNA to seek and obtain an illegal gain at the expenses of the members of LIUNA.